UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY COLE, | ) | CASE NO. 1:10-CV-2144 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 18). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Bobby Cole's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I. INTRODUCTION & PROCEDURAL HISTORY

This case has a lengthy background involving three hearings before three different administrative law judges. On January 25, 2002, Bobby Cole ("Plaintiff" or "Cole") filed an application for Supplemental Security Income benefits alleging that he became disabled on that date.[1] (Tr. 33, 48-50). Cole's application was denied initially and upon reconsideration. (Tr.

---

[1] Plaintiff originally applied for Supplemental Security Income benefits on April 9, 1987. *See* (Tr. 13). The Commissioner found him disabled as of April 1, 1987, based upon mental retardation. (*Id.*) Plaintiff's benefits were later suspended and eventually terminated because the agency could not locate him. (*Id.*) The agency eventually learned that it could not locate Cole because he had been incarcerated from 1990 through January 2002. (Tr. 560).

33-38, 40-43). Thereafter, he requested a hearing before an administrative law judge ("ALJ") to challenge the agency's denial. (Tr. 44). The hearing commenced on March 9, 2004, and Administrative Law Judge Perry Rhew ("ALJ Rhew") presided over the proceeding. (Tr. 163-75). Plaintiff, along with vocational expert, Lynn Smith, testified at the hearing. (*Id.*) Subsequently, on March 24, 2004, ALJ Rhew denied Cole's application for benefits after applying the five step sequential evaluation analysis.[2] (Tr. 10-20). Plaintiff requested review of ALJ Rhew's decision from the Appeals Council, (Tr. 8), but, on September 24, 2004, it denied Plaintiff's request for review. (Tr. 3-5). Thereafter, Plaintiff appealed the Commissioner's decision to this Court.

On August 16, 2005, United States Magistrate Judge George J. Limbert ("Judge Limbert") issued a Memorandum Opinion and Order reversing ALJ Rhew's decision and

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

remanding the case back to the Social Security Administration for further review.  (Tr. 213-26). Judge Limbert found that there was not sufficient evidence to support ALJ Rhew's finding that Plaintiff did not meet a listing and that Plaintiff retained the ability to perform repetitive tasks. (*Id.*)  Judge Limbert also found that ALJ Rhew had failed to resolve conflicts within the state agency physician's opinion upon which the ALJ relied, and that Cole had successfully put forth new evidence which warranted consideration.  (*Id.*)  Thus, following Judge Limbert's ruling, the Appeals Council remanded Cole's case to another ALJ for further review.  (Tr. 239-41).

On October 19, 2006, a second administrative hearing was held before Administrative Law Judge Thomas Ciccolini ("ALJ Ciccolini").  (Tr. 499-525).  Plaintiff again appeared with counsel and testified at the hearing.  (*Id.*)  A vocational expert also appeared and testified.  (*Id.*) However, on November 13, 2006, ALJ Ciccolini issued his written decision also denying Cole's application for benefits.  (Tr. 558-69).  On November 27, 2006, Plaintiff filed a request for review of ALJ Ciccolini's decision with the Appeals Council, (Tr. 181), but, on May 23, 2007, the council denied Plaintiff's request, thereby making ALJ Ciccolini's ruling the final decision of the Commissioner.  (Tr. 176-78).

Subsequently, Plaintiff filed a second appeal with this Court challenging ALJ Ciccolini's ruling on two grounds.  First, Plaintiff argued that ALJ Ciccolini's determination that Plaintiff's impairments did not meet listing level was unsupported by substantial evidence.  *See* (Tr. 585). Second, Cole averred that the record did not support the ALJ's residual functional capacity ("RFC") finding with regard to Plaintiff's mental capabilities.  (*Id.*)  On April 8, 2008, United States Magistrate Judge Nancy A. Vecchiarelli ("Judge Vecchiarelli") issued a Memorandum Opinion and Order vacating ALJ Ciccolini's decision and remanding the case back to the Social Security Administration.  (Tr. 571-89).  Although Judge Vecchiarelli rejected Plaintiff's first

assignment of error, she found that Plaintiff's second argument had merit. (Tr. 586-89). Specifically, Judge Vecchiarelli held that ALJ Ciccolini erred by failing to mention, or offer reasons for rejecting, the opinion of Plaintiff's treating nurse, Mary Harrison ("Nurse Harrison"), who treated Cole over a number of years, and was the only treating source to offer an opinion on Cole's impairment. (*Id.*) Additionally, Judge Vecchiarelli held that the ALJ failed to consider the opinions offered by examining source, Dr. Emil Ibrahim, during his consideration of Plaintiff's limitations. (*Id.*) On remand, the judge ordered the ALJ to consider Nurse Harrison's opinion and to reconcile the opinions offered by Nurse Harrison and Dr. Ibrahim. (*Id.*) Accordingly, on May 19, 2008, the Appeals Council remanded the case to a third administrative law judge for further review in accordance with Judge Vecchiarelli's decision. (Tr. 592-94).

On October 14, 2008, a third administrative hearing was held to review Plaintiff's application for benefits. (Tr. 824-57). Administrative Law Judge Morely White ("ALJ White") presided over the hearing. (*Id.*) Plaintiff also appeared and testified for a third time. (*Id.*) On November 18, 2008, ALJ White denied Cole's application for benefits. (Tr. 535-47). Once again, Cole requested review of the ALJ's decision from the Appeals Council, (Tr. 529), but it denied Plaintiff's request explaining that ALJ White had "undertook a full and complete evaluation of all the evidence of record." (Tr. 526). Plaintiff now seeks judicial review of ALJ White's decision pursuant to 42 U.S.C. § 1383(c), as it represents the final decision of the Commissioner.

Plaintiff, born on February 23, 1967, was forty-one years old on the date he testified before ALJ White. (Tr. 209, 834). Thus, he is defined as a "younger person" for Social Security

4

purposes. 20 C.F.R. § 416.963(c). He has a limited formal education[3] and no past relevant work experience. (Tr. 545).

## II. ALJ WHITE's RULING

After completing a review of the record, ALJ White determined that Cole was not disabled under the Social Security regulations. (Tr. 535-47). At step one of the sequential evaluation analysis, the ALJ found that Cole had not engaged in substantial gainful activity since January 25, 2002, the date Plaintiff applied for benefits. (Tr. 536). Next, at step two, ALJ White determined that Cole suffered from the following severe impairments: hepatitis C, major depressive disorder, borderline intellectual functioning, intermittent explosive disorder and mixed personality disorder. (*Id.*) However, at step three, he concluded that none of these impairments, individually or combined, met or equaled one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Before moving to the next step in the analysis, the ALJ determined that Cole retained the RFC to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b). (Tr. 539). Because ALJ White held that Plaintiff did not have any past relevant work experience, he bypassed step four of the sequential analysis and moved directly to step five, at which point he determined that there were jobs existing in significant numbers in the national economy which Cole could perform. (Tr. 545). Specifically, the ALJ stated that Plaintiff's RFC permitted him to work as an inspector/hand packager, assembler of small products, or as an assembler of plastic hospital products. (Tr. 546). Accordingly, the ALJ ruled that Plaintiff was not disabled.

---

[3] Plaintiff gave conflicting reports of his education level. *See* (Tr. 544). Regardless of his actual highest level of achievement, Plaintiff acknowledged that he knew how to read and write. *See* (Tr. 132, 847-48).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence

6

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff attacks ALJ White's decision on one overarching ground. Cole maintains that ALJ White failed to properly consider the opinions rendered by his treating source, Nurse Harrison.[4] Plaintiff submits that the treatment records from the Murtis H. Taylor Multi-Service Center (the "Center") and the other physicians who evaluated Plaintiff, are consistent with Nurse Harrison's findings, and that the ALJ should have assigned controlling weight to her opinions and found him to be disabled.

The key document at issue is a mental RFC assessment checksheet Nurse Harrison completed on March 8, 2004 (the "Checksheet"). (Tr. 398-400). In the Checksheet, Nurse Harrison rated Plaintiff's mental capacity in several areas of functioning. (*Id.*) She opined that Cole's abilities were "fair"[5] in the following areas: following work rules; using judgment; maintaining regular attendance and being punctual within customary tolerances; dealing with the public; relating to co-workers; working in coordination with or proximity to others without being unduly distracted or distracting; understanding, remembering and carrying out simple job instructions; maintaining appearance; socializing; and leaving home on his own. (*Id.*) On the

---

[4] The parties fully set forth Plaintiff's relevant medical history in their briefs. Cole's medical history was also thoroughly outlined in Judge Vecchiarelli's Memorandum Opinion and Order. (Tr. 575-82). Neither party attacked ALJ White's description of Plaintiff's medical history; Plaintiff challenges only the ALJ's weighing of the evidence. The undersigned therefore adopts ALJ White's description of Plaintiff's medical history.

[5] The Checksheet defined "fair" as follows: "[a]bility to function in this area is seriously limited but not precluded[;] [m]ay need special consideration and attention." (Tr. 398).

other hand, Nurse Harrison remarked that Cole had "poor or no"[6] ability to complete the following tasks: maintain attention and concentration for extended periods of two hour segments; respond appropriately to change in a routine setting; interact with supervisors; function independently without special supervision; deal with work stresses; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember and carry out complex or detailed job instructions; behave in an emotionally stable manner; relate predictably in social situations; and manage funds and/or schedules. (*Id.*)  Lastly, at the end of the Checksheet, Nurse Harrison diagnosed Cole with intermittent explosive disorder and commented that he had problems with authority figures.  (Tr. 400).  In addition, she remarked that Cole "ha[d] an explosive tendency when provoked" and that he had "very limited cognitive potential".  (*Id.*)

Cole asserts that ALJ White should have given controlling weight to the findings contained within Nurse Harrison's Checksheet because as Judge Vecchiarelli noted, she was the only treating source to offer an opinion regarding Plaintiff's mental impairment.  Instead, ALJ White afforded less weight to Nurse Harrison's opinions explaining that her conclusions were inconsistent with her own treatment notes and with the treatment notes of other mental health professionals.  The Court finds that ALJ White's decision is supported by the substantial evidence in the record.

It is well-established that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

---

[6] The Checksheet defined "poor or no[]" as follows: "[n]o useful ability to function in a competitive setting[;] [m]ay be able to perform in a sheltered setting."  (Tr. 398).

8

This doctrine, termed the "treating source rule" recognizes that physicians, or other acceptable medical sources, which have a long-standing relationship with an individual, are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 416.927(d)(2).  Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

Even when a treating source's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give to the opinion.  *Id*.  These factors include:  the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion.  20 C.F.R. § 416.927(d)(2)-(7).  The regulations also require an ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinions.  *Id*.

However, only opinions from particular sources can establish the existence of an impairment or be given controlling weight.  20 C.F.R. § 416.913(a); SSR 06-03p ("only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight").  These sources are labeled as "acceptable medical sources", and generally refer to licensed physicians, psychologists, optometrists, podiatrists and pathologists.  20 C.F.R. § 416.913(a)(1)-(5).  Although nurses do not fall under the regulations' definition of an acceptable medical source, an ALJ should consider evidence from nurses and

9

other medical professionals because such evidence may provide information regarding the severity of a claimant's impairment.[7] 20 C.F.R. § 416.913(d); SSR 06-03p; *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007). Furthermore, Social Security Ruling 06-03p confirms that "although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p.

Because Nurse Harrison does not fall under the category of an acceptable medical source, under normal circumstances her opinions would not have warranted the same scrutiny applied to opinions from such sources. Nevertheless, Social Security Ruling 06-03p alludes to instances of when opinions from other sources may be just as significant as those from an acceptable medical source, and therefore, require additional consideration. In the instant case, Nurse Harrison was the only medical source equipped with a longitudinal view of Plaintiff's condition, who opined as to the impact of his impairments on his ability to perform various work-related mental tasks. Accordingly, it was appropriate for ALJ White to consider Nurse Harrison's findings pursuant to the regulations used to evaluate the opinions of acceptable medical sources and Judge Vecchiarelli's order.[8]

---

[7] Nurses fall under the category of "other sources". 20 C.F.R. § 416.913(d)(1).

[8] Although Judge Vecchiarelli loosely referred to Nurse Harrison as a treating source, neither party directly challenged the appropriateness of her use of the term in reference to Nurse Harrison in their briefs before the Court. Moreover, the undersigned does not have jurisdiction to modify a decision issued by another judicial officer of this Court. Judge Vecchiarelli's opinion listed several reasons justifying remand. ALJ Ciccolini's mere failure to mention Nurse Harrison's opinion in his decision may have been a sufficient basis for remand. *See Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011) ("[M]any unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through [] counselors. The practical realities of treatment for those seeking disability benefits

Though Nurse Harrison's opinions were important and worthy of mention, the Court finds Plaintiff's argument unavailing.  The ALJ provided adequate reasons for his decision to assign less weight to Nurse Harrison's findings.  To begin, the ALJ explained that Nurse Harrison's own treatment notes contradicted the findings contained within her Checksheet.  For example, in the two months prior to completing the Checksheet, Nurse Harrison opined that Plaintiff's judgment and insight were improving from fair to good and that he was "able to maintain control of [his] behavior in the face of extreme provocation." (Tr. 161-62).  She also remarked that his attitude was cooperative and that he denied any hallucinations, delusions or paranoia.  (*Id*.)  Furthermore, Nurse Harrison's subsequent treatment notes continued to document stability in Cole's condition.  For instance, just months after completing the Checksheet, Nurse Harrison described Cole's judgment and insight as "limited but adequate", and stated that his mood and behavior were stable despite external stressors.  (Tr. 462-63).  In July of 2005, she noted that his behavior and mood remained stable, that he got along with others, and that his judgment and insight were "limited but compliant" when he adhered to his treatment regimen.  (Tr. 450).  Looking at these findings juxtaposed to the Checksheet which depicted Plaintiff as having poor or no ability to deal with work stress or to behave in an emotionally stable manner, there is support in the record for ALJ White's conclusion that Nurse Harrison's own treatment notes conflicted with her findings stated in the Checksheet.

ALJ White also found that other treatment notes from the Center showed that Cole's condition continued to improve when he was compliant with medication.  Treatment notes from the Center in 2006, reflect that Cole's judgment and insight were generally deemed adequate,

---

underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care.").

and that he experienced no signs of delusion, paranoia, or hallucinations.  (Tr. 656-64).  Similarly, as the ALJ noted, treatment notes from 2007 and 2008 also routinely showed that Cole had a cooperative attitude, fair to good judgment, and no complaints of delusions, paranoia or hallucinations.  (Tr. 753-65).  Although some of the treatment notes showed that there were occasions when he struggled, ALJ White noted that Plaintiff consistently demonstrated that he was able to control his behavior in stressful conditions.  (Tr. 540).  Accordingly, the ALJ's finding is supported by the record.  The treatment records which reflect a more negative view of Plaintiff's mental health are not sufficient to overturn the ALJ's ruling regarding the amount of weight attributed to Nurse Harrison's opinion.  So long as the "Commissioner's decision is based upon substantial evidence, this court must affirm, even if substantial evidence exists in the record supporting a different conclusion."  *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 476 (6th Cir. 2011) (*citing Richard v. Perales*, 402 U.S. 389, 401 (1971)).

Cole also contends that ALJ White should have assigned greater weight to Nurse Harrison's Checksheet because her findings were consistent with the evaluations of other mental health professionals who examined him.  As a preliminary note, the Court finds that Plaintiff's argument on this issue amounted to nothing more than a regurgitation of Plaintiff's chronological medical treatment history contained within the "Statement of the Facts" section in Plaintiff's brief.  *Compare* (Pl.'s Br. at 5-13) *with* (Pl.'s Br. at 17-23).  Plaintiff did little to develop or explain how his treatment with various medical sources bolstered Nurse Harrison's findings.[9]  Nevertheless, the undersigned will address Plaintiff's claims.

---

[9] In *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997), the Sixth Circuit announced that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived[;] [i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (*citing*

First, Plaintiff implied that the psychiatric evaluation completed by Grace Nerueeg, MSN, RNCS, (Tr. 110-14), supported Nurse Harrison's findings.  Yet, aside from diagnosing Plaintiff with adjustment disorder, the nurse commented that Cole's attitude was cooperative, his insight was fair, and his judgment was good.  (Tr. 113-14).  Moreover, this assessment was completed in 2002, two years prior to Nurse Harrison's completion of the Checksheet.  Thus, it does not provide much support for Nurse Harrison's opinions.

Similarly, Plaintiff's reliance upon the opinions of Dr. Herschel Pickholtz and Dr. Kenneth Felker are also unfounded because their opinions were not consistent with Nurse Harrison's findings.  Dr. Pickholtz assessed Plaintiff in March of 2002.  (Tr. 132-37).  He conducted a series of tests on Cole, including the Wechsler Adult Intelligence Scale – III, to which Plaintiff obtained a full scale IQ score of 67, and verbal and performance scores of 69 and 72 respectively.  (Tr. 135).  However, Dr. Pickholtz stressed that "these scores [we]re underestimates of [Plaintiff's] true levels of functioning". (*Id.*)  He noted that Plaintiff exhibited tendencies to exaggerate and malinger.  (Tr. 137).  Additionally, he opined that Plaintiff's ability to complete work-related activities and follow instructions fell within the low average range, and that his ability to maintain speed, consistency and reliability suffered from only a mild impairment at most.  (*Id.*)  Likewise, Dr. Felker's examination of Plaintiff, conducted in May 2005, revealed similar results.  (Tr. 428-32).  Dr. Felker opined that Cole had only a mild impairment with relating to the public, and a mild to moderate impairment with relating to supervisors and peers, but that he had no problems with understanding or following simple

---

*Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

13

instructions. (Tr. 431). Thus, both of their opinions are inconsistent with Nurse Harrison's opinion that Cole had poor or no ability to maintain attention or interact with supervisors.

The Court also rejects Cole's assertion that the opinions offered by Dr. Emil Ibrahim and Dr. Mitchell Wax confirmed Nurse Harrison's findings. Dr. Ibrahim rated Cole's ability to maintain attention and concentration as poor. (Tr. 491). In addition, Dr. Wax concluded that Plaintiff was "significantly impaired" in his ability to relate to others and to understand, remember and follow instructions. (Tr. 691). Although these findings might appear to validate Nurse Harrison's findings, they do not provide sufficient evidence to overturn the ALJ's decision. Notably, ALJ White assigned less weight to both doctors' opinions, ruling that they were each "inconsistent with the evidence". (Tr. 542). The ALJ discredited Dr. Ibrahim's opinion because Cole's behavior during his visit with Dr. Ibrahim was inconsistent with his behavior during treatment visits at the Center. (*Id.*) For example, the ALJ noted that during his six years of treatment at the Center, Plaintiff had only complained of hallucinations once, whereas he told Dr. Ibrahim that he had a history of hallucinations. (Tr. 542, 490). Dr. Ibrahim also commented that Plaintiff was dressed poorly and displayed poor impulse control. (Tr. 490). Likewise, ALJ White found that Cole's presentation to Dr. Wax greatly conflicted with his presentation to other examiners, particularly those at the Center. The ALJ contrasted Dr. Wax's comments that Plaintiff had a hard time answering simple questions and often drifted off during the examination, (Tr. 542, 691-92), with treatment notes from the Center dated one day prior to Dr. Wax's examination wherein Plaintiff was described as "cooperative, coherent, pleasant, and sociable", (Tr. 542, 764), and stated that he was feeling "wonderful and fine" (Tr. 764). ALJ White also noted that neither Dr. Ibrahim nor Dr. Wax had access to Plaintiff's medical record to compare Cole's presentation to them with the behavior he presented to other physicians. (Tr.

542).    Additionally, Dr. Wax stated that at times Plaintiff appeared to be "fabricating information", and as a result "all [of] the information he provided [wa]s suspect".  (Tr. 689). Given all these factors, it was reasonable for ALJ White to discredit both doctors' opinions.

Next, Plaintiff recited the findings reached by Dr. Wilfredo Paras and Mereshia Bates, RN, in an attempt to show that their opinions corroborated Nurse Harrison's findings.  Dr. Paras specializes in internal medicine and performed a one-time examination of Plaintiff's physical capabilities.  (Tr. 693-94).  He opined that Cole's learning disorder markedly limited his ability to work.  ALJ White discredited Dr. Paras's opinion both because he found that it appeared to be based upon Plaintiff's subjective complaints and because there was not any evidence showing that Dr. Paras was qualified or experienced in mental health treatment or assessment.  (Tr. 543). Cole did not offer any evidence to rebut this conclusion.

Cole presented to Ms. Bates at the Center for a psychiatric evaluation on September 23, 2008.  (Tr. 815-18).  Although the ALJ did not explicitly address this evidence in his opinion, the findings contained within the report are consistent with the other treatment notes from the Center reflecting that Plaintiff's mental state was stable.  Ms. Bates remarked that Cole was cooperative and oriented even though he had not taken his medication in two months.  (Tr. 815, 817). Plaintiff denied experiencing any paranoia, delusions or hallucinations.  (Tr. 817).  Though Ms. Bates opined that Cole had a limited ability to reason abstractly or to perform mathematical calculations, Plaintiff has failed to prove that these shortcomings were not linked to his failure to take his medication, nor has Cole demonstrated how these findings precluded him from performing even simple work.

Finally, the Court rejects Plaintiff's contention that his testimony was consistent with Nurse Harrison's opinions.  Plaintiff's testimony actually differed greatly from Nurse Harrison's

15

findings. During the hearing, ALJ White questioned Cole about his ability to work. After highlighting that Plaintiff had quit his job because of knee problems, rather than any mental health issue, and that Cole looked good, got along with others, and admitted that his medications made him feel better, the ALJ and Plaintiff rehearsed the following exchange:

Q: So if you keep taking your [mental health] medication, why can't you do some work?

A: That's a good question, Your Honor. That's a real good question.

Q: Well, do you have an answer for that very good question?

A: No, I don't, Your Honor.

(Tr. 847). Thus, Plaintiff's testimony appeared to conflict with Nurse Harrison's opinions. ALJ White reiterated this exchange in his written decision and found that Plaintiff's inconsistent statements and malingering rendered his testimony less than credible. (Tr. 544). Accordingly, the Court finds that Plaintiff has not stated a legitimate basis for remand and likewise denies Plaintiff's request for an award of benefits.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  December 27, 2011.